Good morning, may it please the court. My name is Rebecca Smith and I represent the Appellants Native Ecosystems Council and Alliance for the Wild Rockies We have essentially two issues on appeal today before the court The first issue is the Forest Service's failure to address the riparian management objectives in its analysis of the East Deer Lodge project the second issue is the Forest Service's failure to abide by its own scientific reports when it implemented the forest plan snag habitat standard So I'll first begin by addressing the project specific challenge Which is the agency's failure to address the riparian management objective and riparian conservation area standard in Response to something that the agency had raised in its answer brief They had argued that at the NEPA level the Forest Service doesn't need to address in an EIS whether it's complying With its own forest plan requirements And so even though the case law is clear the statute is clear that a project must be consistent with a forest plan There is actually a specific NEPA regulation that says you do need to address in the EIS whether a project is Consistent with land use planning objectives. I read it a little differently Right at this intersection. I read their brief to be saying we don't have to show our work Coupled with the fact that I think they're right that their project Presupposes that not all of the well, I'm gonna call them conservation riparian conservation areas were in compliance Because they talked about some active where streams are in compliance We'll be doing one thing where we're not meeting or exceeding expectations We'll be doing something else. So given that that was that's baked in that they weren't across the board in compliance Is it is it your position that they have to show how they determined that? Yes, your honor because that's what the forest plan says They have to do the forest plan says any activity in a riparian conservation area Must either meet or exceed the riparian management objectives and then there's a list of quantified objectives And so the Forest Service just skipped over that step. I don't think they did. This is what I'm trying to get at I'm not sure they necessarily did I read their response and their plan to project description to to to presuppose The determination that they weren't all in compliance I mean if they'd taken the position that they're everything's in compliance and none of these activities are going to have any impact That'd be one thing but I don't think they do that And what well your honor that's the purpose of NEPA is not just for the agency to inform itself and so that's where the public part comes in the purpose of NEPA is to for the agency to inform the public of what it's doing and so that is the part where they do have to show their homework and Well, but then that would then we get to what did you really ask them? So I'm trying to get into this iterative process back and forth and I and it just seems you just The briefing to me seemed to kind of sail right past each other on these points So your honor that would be the exhaustion argument that they made and I will tell you precisely an exhaustion argument It's a waiver argument It has to do with specificity of the objection or comments that you're waving as opposed to exhaustion Or at least it would be really helpful to me if you could keep those apart Maybe address them both if you want to address the exhaustion and so the statutes and regulation they cite are all exhaustion Exhaustion the briefing of course and they're talking about the specificity of what really asked and so when we address Exhaustion in terms of what the specificity needs to be we have to look at this court's precedent in for example Idaho Sporting Congress versus Rittenhouse Native Ecosystems Council versus Dombeck and those cases repeatedly say that a member of the public doesn't have to address it with the specificity That an attorney would when they prevent when they present a refined legal argument And so bringing up the subject matter is sufficient and I want to point the court to where the plaintiffs did in fact do that Fvr 8 they said please disclose the results of up-to-date monitoring of fish habitat and watershed conditions as The only place in the forest plan that requires up-to-date monitoring of fish habitat is the riparian management objective and riparian conservation area standard So while it is where is it required in the forest plan? I mean the comment seems to me to suggest Okay, the forest plan has this requirement to disclose that I looked at the forest plan and I couldn't find it Your honor the forest plan standard is the riparian conservation area standard This is so I look at that I'm looking at it right now what exactly there requires publication of what Christian Accurately applied they're described as their work. So your honor at er 407 if we look where it says Activities in riparian conservation areas that are not meeting the riparian management act objectives Shall include a restoration component that is commensurate with the scope of activity affecting the fisheries So basically we need to know what the condition is before we can propose a solution but this is but their hope their main point is that this isn't a project that's aimed at restoration of the waters and it's not a project they think is going to have a material effect on the waters and And so acting like it's aimed at Accomplishing something that really isn't the aim Puzzles me. Well, your honor The problem is that they're creating a solution before they know what the problem is the forest plan codified these six quantitative riparian management objectives And they say you have to determine for example Do pool frequency meet the width and number of pools 10 to 96 20 to 56, etc Are the large woody debris over 20 pieces for mile per mile is the bank stability over 80% Stable is the lower bank angle over 75% is the width to depth ratio less than 10 What is the water temperature? These are supposed to be the diagnostic tools that the agency uses to determine Then in the riparian conservation ever area standard what activities would be commensurate? With the need to improve the condition so they have to look at the objectives Compare it to the existing condition to determine whether or not they're meeting the objectives and then if they are not they have to propose an activity that Responds to that specific objective and so that's why coming up with generic Restoration ideas randomly spread throughout the project area doesn't meet this because this right forgive me, but you just said something Sometimes it sounds in your briefing like you don't know which streams or meeting are exceeding. Yes, your honor. We do not sometimes it sounds like that's your Problem and sometimes it sounds like you the your objection really is that they didn't show their work as I put it in showing how they were going to in areas where they were falling where the conditions were falling short that they were going to Improve and I really can't tell which it is you were getting at at the agency level Yes, your honor The very first thing that the problem is is that they have not compared the existing conditions to these objectives So that means we don't know whether they're meeting these objectives very first thing I mentioned was something different tonight. You're confusing me The very first thing I mentioned is it seems to me sometimes you're arguing that you don't know which streams Yes in this project area. We're not in compliance. Yes, okay It's just notable to me because this feels like a real moving target when of course we're always trying to reinvent You know with this that's the nature of our job what happened below But this is not how the district court described the challenge at all. That's correct Your honor the district court looked at it as a generalized NEPA claim and they and the district court basically said Because they took a hard look at water quality in general because the project in general is designed for restoration That's good enough and the district court because the district court like the plaintiffs and like the defendants Can't point to anywhere in the record where the agency actually did Disclose the riparian management objectives and determine whether or not each stream met them on page 23 the district court's order said Plaintiffs allege two specific defaults one the Forest Service didn't evaluate the condition of each stream within the project area according to the plan standards To excuse me to the Forest Service unlawfully failed to disclose something very specific the numeric maximum daily load for sediment in Peterson Creek That's a different claim. That's not on appeal This is not on appeal the second one you mentioned. Okay, so I don't need to worry about that. Yes, so then that's a relief Okay, so so go back to that what the way the judge describes this your Challenge didn't evaluate the condition of each stream within the project area according to the forest plan standards Does he have that right? Let me just pull that language up You're reading from page 23, is that right, right? Yes, your honor that is that is the correct NIFA claim, okay Objections Do not specifically cite to the forest plan RCA standard and I don't think they do mention that RCA standard The conservation groups clearly expressed concern with water quality and fish habitat Including a concern that the Forest Service was not disclosing sufficient information to properly assess the impacts This this is your argument so your question is does the Specific comment that they raised is that Akin to or is that similar enough to how the district court characterized the claim? I think even your briefing acknowledges that the comments that you raised the objections that were raised really didn't didn't put this fine a point On it about the riparian conservation areas being in compliance with the management objectives. Is that right? No, your honor if we could look at the FR F ER 8 they raised the question Please disclose the results of up-to-date monitoring of fish habitat and watershed conditions. That's Those conditions are the riparian management objectives Okay, so this your reply brief says that we didn't reference the forest plan RCA standard. It was not specifically cited That's correct in the comments and that's why I would point the court back to the Rittenhouse and Dombeck Opinions where this court has said you do not have to specifically cite the forest plan requirements so in the Rittenhouse case The plaintiffs had raised questions about old-growth species and concerns about old-growth species the forest plan had a specific standard that said you must monitor the population trends of old-growth species and The Forest Service in that case as well said well they didn't say in their comments that they must monitor the population trends of old-growth species as required by the forest plan and this court Said but it's clear to us that their concern was old-growth species They don't need to specifically use the language of the forest plan or say it's the forest plan standard in order to preserve Their right to bring a claim before the court It seems to me it'd be one thing if the if the agency were had denied That they were out of compliance And if they've they've they've if they had begun from a premise where all the streams were in compliance Once with the management objectives, you would have a different Circumstance here, but I read their project plan to be clear that some of the streams aren't we don't know that your honor and So my first question is do you agree with that? And the second that some of them weren't because it talks about in areas where they aren't we're gonna meet or exceed we're gonna do this and where they do meet or exceed we're gonna do that and And then this circles back to my I just want to give you one more chance to tell me where does it say they have? How they decided which streams were or were not well your honor I would point to the two district court opinions from the District of Oregon and District of Idaho that already addressed this exact issue and said They do have to address Riparian management objectives and my response directly to you is they don't specifically say here are the streams that do not address Riparian do not meet their riparian management objectives. They don't even address it So for five out of the six, you don't identify them. They don't disclose them They don't compare the existing condition so there could be and you're and you're just to be clear because you just I just want to make sure that your briefing is not clear on this point by my read and maybe my shortcoming but your challenge is that they were required to identify which streams and Talk about how they had made the measurement. Is that right? Yes, your honor for any any Riparian conservation area where there is any activity at all The forest plan requires them to say whether they meet or exceed the riparian management objectives They did not disclose and comply and compare. They did that. That's my that's my And I don't see in their analysis anywhere. For example where they addressed temperature bank stability You know and the right and and your argument is that the conclusion is not enough you wanted to see the Yes, because the analysis is what shows us where and what type of Remediation activities and so we don't know if there's even more streams out there. For example something they didn't address bank stability What if there are a number of other streams out there that don't meet the bank stability riparian management objectives? But they've just been sweeped under the rug because the agency didn't do that analysis. Yeah, this isn't a project that's aimed at that Yeah And that's what I thought the point the district court made is that That if you have a project that's aimed at addressing that ill you specifically address that ill if you have a project that you don't Think that is aimed at something else You evaluate whether it's going to what kind of impact it's going to have and I I don't understand why that requires the kind of detail analysis you're assisting that a project about the After now forgotten what the disease was, but anyway that the tree disease Necessarily means analyzing each of the streams that runs through because commercial logging affects and degrades our stream habitats And this is a project with hundreds and hundreds of acres of commercial logging with log hauling over Over a hundred miles of roads and that's why we have to look at the plain language of the forest plan itself Which says any activity requires this analysis. It doesn't matter if the forest services are restorative Let's look at the forest plan because you're taking this analysis to mean something that I haven't seen specified in the forest plan So show me where the analysis you're talking about is something that that standard one requires Standard one says any Activity in riparian conservation areas shall be designed to enhance restore or maintain The characteristics of the RCA by implementing the following requirements and then a B and C say a for example activities in riparian conservation areas that meet or exceed Riparian management objectives must be designed to maintain existing stream function Activities in riparian conservation areas that are not meeting the riparian management objectives shall include a restoration Component commensurate with the scope of activity affecting the fishery which trends towards accomplishing desired stream function So the only way we can know whether These areas are meeting the riparian management objectives Is this if we have an analysis and so for five out of these six factors pool frequency large woody debris bank stability lower bank angle and water temperature We don't know if the streams are complying with these objectives or not And so the district court says that the Forest Service didn't authorize Timber cutting and riparian areas and the only actions that are authorized are what the district court describes as restorative in nature If that's the case Why isn't that enough? Well, your honor, that's that's false. There is timber cutting that is going to occur We provided this while telling me there's timber cutting doesn't tell me that that statement is false What evidence do you have that? In fact, there is timber cutting that's been authorized in riparian areas Yeah 217 to 218 says there will be tree felling within riparian habitat in the dry Cottonwood sub watershed the Girard Gulch sub watershed the Oro Fino sub watershed and the sand hollow Sub watershed and the Peterson sub watershed and other half of the district court statement goes on to talk about the net benefit Basically, I'm summarizing. Yes, but do you want to address that? Yes, and that is that we don't actually know what the net benefit is in relation to those five riparian management objectives that they didn't address So we don't know how these will address bank stability Large woody debris because they weren't addressed in the EIS So we don't have the analysis yet to know if they're truly restorative We don't even know which streams are are not meeting those five out of the six riparian management I see that my time is running down and I just wanted to See if the court also had any questions on our other claim, which was the snag habitat standard Regarding the averaging over the analysis area or also completely failing to address the 10-inch snags It appears not Thank You counsel. I'd like to reserve my remaining time for a while You Good morning, may it please the court Emily Palachuk on behalf of the federal defendants The East Year Lodge project is a cooperative Plan to address the impacts that have happened in the East in the East Year Lodge Valley management area mostly due to the mountain pine bark beetle epidemic I'd like to turn since the court has had a lot of questions about the riparian conservation area standard Both judge Clifton and judge Kristen have this correct and the issue here is that plaintiffs are misreading the RCA standard What the RCA standard is intended to do is to address Impacts in the riparian conservation areas when there is a project activity that is going to affect those areas in some way So if in this case there were commercial logging that were happening in the riparian conservation areas then the Forest Service would be required to analyze the impacts of that the the commercial timber logging and then Make sure that the affected areas are either already meeting The RMOs or that if they are not meeting the RMOs that restorative measures accompany the commercial project Here there's no commercial logging that is happening in the riparian areas. The only thing that's happening is there because we just had Right a factual question there and I confess I'm sufficiently lost so I can't answer the question. So please address specifically what we just heard Sure, so there is a difference between commercial timber harvest and the tree felling that is happening in this case And that's described in the project EIS quite extensively, but I don't think in the judge's order Which is what we're getting hooked up on that. I think he just used a bit of a shorthand, right? So could you walk us through that? I think he said yes, did he say timber cutting? I think a tree felling is the the technical term for it. No, I'm talking about the judge's order. We got to do this Remember, we're just a fellow court judges. We have to take this slow And I think the judge's order is where he's using a shorthand He's not using that language and I think judge Clifton I'm I don't want to speak to judge Clifton, but I I think we might be having the same problem Didn't he say in the order that the project doesn't authorize? Timber cutting correct. Okay, and that's literally true. You're telling us, right? So that's there's no there's no contract with a timber company to take the trees from repairing conservation areas and sell them That's not something else that is going on and there's tree felling and what that is is it's actually a restorative measure It's meant to help the RMOs. So they go in by hand and will Fell the trees by hand not with any mechanical Operations and when they fell the trees they can use them to restore the areas in certain ways One way is that they create worm log fencing So they fell those trees and then they put up fences along the bank so that the livestock Can't get so close and they cause the bank to kind of erode which then increases stream sedimentation temperature The other thing that they can do is they fell the trees and let them just fall across the stream And what that does it creates pools in the stream? So it slows the current and those pools are used by the fish to as spawning grounds They like this, but maybe somebody who's not as familiar as you are would think oh, that's going to create a sediment problem Maybe so, where do we go to look for to connect these dots? Sure, there are quite a few places in both the project FEIS and then there was also hydrology report done for the project So I direct the court at the supplemental excerpts of records pages 307 and 19 319 That's the project FE the final environmental impact study Which walks through each of the sub watersheds that are affected by it would that lie within the project area? And it it lays out like the specific creeks within each of those sub watersheds also at 399 to 415 again, that's in the biological evaluation portion of the The FEIS and then I would 433 to 439 and I believe that that's the hydrology report There was also a hydrology report done in 2008 When the plan wasn't the forest plan was amended amended and that is found at supplemental excerpts of record 726 to 734 okay, so I mean this is you know a In the watersheds and that was responsive to what plaintiffs had asked for they asked to know about the watershed conditions And so the Forest Service Explained exactly what happened Or what was happening in the watersheds? Plaintiffs did not what they are asking for here is they are asking for a specific statement as to whether or not each of these creeks and various riparian areas is meeting or Falling short of the RMOs, right? That's what they're asking, right? There is not a specific statement that would say this Creek meets this Creek does not meet instead There's a general discussion about the conditions that encompasses each of the RMOs Within the FEIS opposing counsel's argument is that you're required by our case law to make that showing what's your response? There's nothing in the forest plan standard that would require that and that's particularly You know important here because the only thing that is happening in these Riparian conservation areas are measures specifically intended to restore and benefit The the RCA's and I'd point again to the language of the RCA Which says that any activity in RCA's shall be designed to enhance Restore or maintain the physical and biological biological characteristics of the RCA That's exactly what the Forest Service is doing here They are they are undertaking activities that are only restorative in nature that are not meant for any sort of timber harvest How do we know that? It's stated in the in the the FEIS. There's no they state that there is no commercial No commercial treatments or no treatments are happening within the the RCA's other than restorative So your position is that it's enough for the agency to apply its expertise and make the judgment or as Judge Christian said earlier State its conclusion and it's not required to go through This whatever six standards and measure this and measure that for each of the areas that for this purpose the more Generic expertise is sufficient to satisfy the standard. Yes I'm not sure that it's this is an instance when we are deferring the agency expertise. This is a factual matter that these these Actions are not the actions of you know, like where they contract with a company and says look Just the felling of the trees Creating pools in the long run has a deleterious effect because it impacts and I couldn't begin to say what because I don't know any Hydrology, but at what point is it enough for the agency to state its opinion as opposed to to gather? The data that would confirm that in fact that it's not going to have a deleterious effect Well, it did do that. I mean it discussed what was happening in these sub water says it does it sorry it did do what it? I'm sorry It did discuss exactly what the effects of the hand felling and and other activities were going to be these these SER Yes, as you've given us exactly they're walking through exactly You know what what they're going to do in those areas and what the expected effect will be but they're stating that conclusion not based on Measuring before and measuring after anything else. They're just saying we know that felling the trees in this manner or creating the wormhole or whatever offense you described has the effect of keeping the grazing animals from Causing the banks to erode and so forth and and that that that is sufficient Under your view to satisfy this standard. Yes, it is There are quite a few measurements that appear they're just not measurements that happened for this specific project So they're referring back to the plaintiff is arguing Look, they got these six measures and you got to do it for each stream and so on and so forth and you're saying no And so I'm trying to find okay, what's the point of conflict? And what is the standard that explains whether or not a is sufficient or you're required to do B? Yeah, and and again, okay So I would encourage the court to look at those sites that I gave because I think you'll see that there are quite a few Measurements that happen they use something called the Rosgren measurements for stream viability Which appear in there? But lawyers, you know, oh, I know Is your answer to judge Clifton's question that even if they had asked these questions or raises objections very specifically Show us that the conditions meet the RMOs Would your answer have been? Okay, we'll show you our work or would it have been we don't have to show you our work Or would it have been or are you saying? We don't have to do a stream-by-stream analysis I'm trying to figure out whether you did it and haven't disclosed it as opposed to It's sort of sounding now like you're saying you don't have to have done that stream by stream Well, so they did a stream-by-stream analysis. I guess maybe I'm confused about what plaintiffs want here I read it as they want a specific statement that says This is what this this stream is or is not meeting this RMO, right? Now I'm trying to just focus on your position is your position that the stream-by-stream analysis was done and It may not have been disclosed with the level of specificity of the plaintiffs want but it was done. Yes, that's option Yeah, that's option a option B is we don't have to have done that stream-by-stream analysis because this project was doing something else Honestly, it's both they did not have to do the stream-by-stream analysis Because if you look at standard 1b, it says that That even if the streams were not meeting the RMOs the standard is met so long as there's a restorative component included in the measure and the bit about commensurate with the scope of activity doesn't apply because there is no You know, exactly happening. So they have met with the standard Regardless just by the mere fact that the only actions occurring here are restorative in nature Do you think I'm right to read and I may not be so this is a genuine invitation to correct me if I'm wrong To read your project description as conceding that some of the streams were not in compliance with the riparian management objectives I think that that's a fair description. I think especially looking back at the 2008 hydrology report that was done back in the when the forest plan was amended there was a statement there that the that most are meeting that There's a desire to get them in a more closer to the desired functioning condition I think is the language that's used in the hydrology report, which I think is that makes a fair assumption that there are watersheds that are not Yeah, right and the the point of this project I mean that as far as the riparian areas are concerned was to increase those You know, they do the hand felling creating the worm fencing creating more pool frequency That also lowers water temperature and then additionally sedimentation is not an RMO But the the the EIS discusses sedimentation in great detail because there are some temporary haul roads That have the potential to increase sedimentation So not only have they addressed how they're going to use best management principles to reduce any potential sedimentation but the Forest Service is going further than that and actually decommissioning several miles of Roads along the riparian areas and they're updating about a dozen culverts To help with that. We should read it. I'm understanding your position to be that we should read the district courts order Which may be a little bit of a shorthand to refer to only Commercial timber cutting is that right? There wasn't going to be any commercial timber covet cutting in the riparian Conservation areas. Yeah, when you hear timber, it's usually a reference to commercial. It's very okay. Not on the 9th circuit Necessarily, this is sort of lingo that we're needing you to help Give us some I think background for so so where's the where's the requirement? What's the support for the requirement that that this timber cutting which to me means cutting down a tree whether it's done commercially or not You're telling me that there's a very meaningful distinction where you do have to make the disclosure on one hand and not on the other Can you please just give me that authority? I Don't have an authority for that. I think that the idea is that the That would be an activity under An activity that requires compliance with NYFMA and NEPA generally and therefore it would trigger all of the necessity They both activities their activities pursuant to the project. Yes, but they're they're considered They're only there for restorative measures. They are not the the activity that the contractor has sought Permission for in essence that it's it's not a the Forest Service is not authorizing a timber sale there No, but they're authorizing somebody's gonna come come in and cut down this deadwood that the Beatles have killed right right and that's happening not on repairing conservation areas Thank you If there are any questions about the snakes Here's not. Okay. Thank you. We'd ask that the court affirm the district court. Thank you counsel rebuttal. I About You asked about Where is the requirement basically that they have to just sort of do this analysis and disclose the analysis to the public? Where why would they have to show their homework sort of was the idea of the question? I think and I guess I would point the court to Native Ecosystems Council vus for service Which is 418 fed third at 961 as well as happener v. Tidwell Which is aren't those cases pretty specific as to the questions asked your honor Um, I can speak to the specificity of both of those cases and happener v. Tidwell The issue was there was a quantitative forest plan requirement Regarding elk hiding cover the Forest Service didn't address hiding cover in the way that the forest plan defined it But then still said we're complying with our forest plan and so this court said you have to actually analyze hiding cover the way it's defined in the forest plan and Because you didn't do that We can't tell whether you're complying with the forest plan or not and that was the same thing in Native Ecosystems Council of the US Forest Service where there was another sort of Quantitative standard to preserve elk hiding cover and the Forest Service had given various Calculations of how it was going to comply with that standard But they never actually did that in a clear way in the record and this court ultimately said while they're giving us a bunch of different calculations on appeal We don't see in the record where they actually applied the standards as it's written in the forest plan And so both of those do address that question And unless there's any further questions, we would ask that you reverse the district court. Thank you Thank you to both counsel for your help for arguing this case Just argued is submitted for decision by the court that completes our calendar for today. We are in recess until 9 a.m. Tomorrow morning
judges: Rawlinson, Clifton, Christen